Young, J.
(concurring). I concur with the order affirming the Court of Appeals judgment and remanding to the trial court for further proceedings. I write separately only to respond to Justice Corrigan’s concurring statement.
First, I disagree with Justice Corrigan’s decision to address respondent’s due process challenges because of our rule that we should decline to reach constitutional challenges when controversies can be resolved on nonconstitutional bases.[1] The trial court’s violation of numerous court rules and statutes constitutes significant error that requires reversal of the termination order as explained in Justice Corrigan’s concurring statement. As the numerous state law violations are sufficient to support this decision, this Court should not consider additional constitutional issues.
Second, I disagree with Justice Corrigan’s conclusion that respondent was denied her right to due process by the admission of hearsay evidence at the termination trial. In general, the rules of evidence do not apply during child protective proceedings.[2] When the court takes jurisdiction over a child, however, the parent has the option to proceed to trial at which the Department of Human Services (DHS) must present legally *941 admissible evidence to establish the grounds for taking jurisdiction by a preponderance of the evidence.[3] However, a parent may waive the right to trial and the right to have the DHS “prove the allegations in the petition by a preponderance of the evidence” by entering a plea of admission and allowing the court to take jurisdiction.[4] By entering a plea, the parent waives the right to have the court take jurisdiction solely on the basis of legally admissible evidence. This waiver does not shift the parent’s “right” to have legally admissible evidence presented against him to a later point in the proceedings. Such a result is not contemplated anywhere in the court rules.
Rather, the court rules provide that the rules of evidence do not apply at the termination hearing unless the parent’s rights are terminated at the initial dispositional hearing or if the parent’s rights are terminated on the basis of grounds stated in a supplemental petition.[5] To the extent that respondent’s rights were terminated, partly on the basis of grounds not raised in the initial petition, I agree that the DHS was required to present legally admissible evidence. However, respondent had no right to have the initial grounds for termination established only by evidence that would be admissible under the rules of evidence. Respondent’s entry of a plea of admission did not open the door to such inadmissible evidence at the termination trial; the fact that the court had taken jurisdiction over the children, regardless of the method, was the cause of the change in the evidentiary standard. Had respondent not entered a plea, the court would have conducted a trial pursuant to MCR 3.972 to assume jurisdiction. Given the evidence regarding the condition of the home, the presence of several unsuitable adult residents, and the parents’ neglect of the children, the trial court certainly would have assumed jurisdiction at that time. Accordingly, the child protective proceedings, including the ultimate termination trial, would have been based on the same otherwise inadmissible evidence. As this result was inevitable, the admission of the evidence following the entry of the invalid plea is harmless beyond a reasonable doubt.[6]
Finally, Justice Corrigan makes the stunning announcement that she “question[s] whether the failure to appoint counsel to represent respondents throughout such proceedings can ever be harmless error.”[7] Justice Corrigan’s query suggests a structural error analysis beyond any existing *942 precedent. Such a standard goes well beyond the due process right to counsel even in criminal proceedings. In a criminal proceeding, a defendant has a due process right to appointed counsel only in cases that may result “in the defendant’s loss of personal liberty.”[8] Even then, the denial of counsel only amounts to structural error when it occurs during a critical stage in the proceedings.[9]
In Lassiter v Dep’t of Social Services, the United States Supreme Court held that a parent’s due process rights are not violated because of a failure to appoint counsel, even at a termination hearing, when the potential deprivation of rights is at its greatest.[10] Justice Corrigan’s query defies the Lassiter Court’s holding and analysis. Through statute and court rules, Michigan has afforded respondent parents greater protection than that required by the federal constitution. Michigan law requires the courts to advise a parent of his right to counsel and to appoint counsel when requested at any time during a child protective proceeding.[11] However, the creation of a due process right to appointed counsel at any and all stages of a child protective proceeding, the deprivation of which amounts to structural error, is a completely novel concept unsupported by precedent and, in fact, contrary to precedent from the Supreme Court of the United States. Such a rule would catapult parental rights above and beyond a criminal defendant’s liberty interest. Such a rule implies that every stage of a child protective proceeding is “critical,” something that is not true even in criminal procedure.[12]
Ultimately, the respondent was denied her right to appointed counsel, in violation of statute and court rule, when the trial court ignored *943 respondent’s request for representation. It is completely unnecessary to entertain hypothetical questions regarding whether such an error defies harmless error analysis.

 In re Rood, 483 Mich 73, 128-130 (2009) (Young, J., concurring in part and dissenting in part); J & J Constr Co v Bricklayers & Allied Craftsmen, Local 1, 468 Mich 722, 734 (2003), citing People v Riley, 465 Mich 442, 447 (2001), and MacLean v Michigan State Bd of Control for Vocational Ed, 294 Mich 45, 50 (1940); Delta Charter Twp v Dinolfo, 419 Mich 253, 264 n 4 (1984).

 Several court rules provide that the rules of evidence do not apply at various stages of the proceedings: MCR 3.965(B)(11) (preliminary hearing); MCR 3.966(C)(2)(c) (placement review proceeding); MCR 3.973(E)(1) and MCR 3.975(E) (dispositional review hearings); MCR 3.976(D)(2) (permanency planning hearing).

 MCR 3.972(C)(1).

 MCR 3.971(B)(3)(b).

 MCR 3.977(E), (F), (G)(2).

 Contrary to the suggestion made by Justice CORRIGAN, ante at 938 n 10,1 do not believe that the removal of the children from respondent’s home or the ultimate termination decision was inevitable. Moreover, Justice CORRIGAN has not responded to the point actually made in my concurrence — that the assumption of jurisdiction was inevitable based on the evidence that would have been presented at the trial conducted pursuant to MCR 3.972.

 Ante at 938-939.

 Lassiter v Dep’t of Social Services, 452 US 18, 25-27 (1981), citing Scott v Illinois, 440 US 367, 373-374 (1979), and Argersinger v Hamlin, 407 US 25 (1972).

 United States v Cronic, 466 US 648, 659 (1984).

 Lassiter, supra at 31-32.

 MCL 712A.17c(4), (5); MCR 3.915(B)(1); MCR 3.965(B)(5); MCR 3.974(B)(3)(a)(i).

 Justice Corrigan avoids answering this criticism by focusing solely on the nature of the right being protected. I do not question that a criminal defendant is entitled to counsel when he faces imprisonment. The law is quite clear on this right. That right, however, is not unqualified and does not extend beyond “critical phases” of the criminal adjudicative process. Thus, I question whether Justice CORRIGAN is suggesting that this Court should expand a criminal defendant’s constitutional right to counsel to non-critical phases of the proceedings or whether she is implying that parental rights deserve greater protection than a criminal defendant’s interest in physical liberty. In order to make sense of her position, she must be urging one or the other, but neither is grounded in any current constitutional jurisprudence.